# Southern Railway Company *v.* Crowder.

*Action by Husband for Damages for Injury to Wife.*

1. *Husband and wife; right of husband at common law to recover for injuries to wife.*—At common law the husband could sue and recover damage for a wrong to the wife occasioning a loss of her companionship and services, and for all expenses incurred by him as a proximate result of such wrong.

2. *Same; Code, sections 2521, 2527; damages.*—Sections 2521 and 2527 of the Code uo not affect the reciprocal duties of husband and wife growing out of the marriage state, within their domestic relation, and the husband has a marital right to the wife's companionship and services to himself and the family, for the loss of which he has a right of action in damages against one by whose wrong the loss was caused; and in such action he is entitled to recover all expenses paid or incurred by him on account of her injuries.

27

[Southern Railway Company v. Crowder.]

3. *Code; section 2521; effect as to duties of wife in marital and do-mestic relations.*—Section 2521 of the Code, making the wife's earnings her separate property, does not absolve her from the duties and obligations imposed by the marriage vow in her marital and domestic relations.

4. *Code, section 2527; effect upon husband's right of action for injuries to wife.*—Section 2527 of the Code, providing that for all injuries to her person the wife must sue alone, does not deprive the husband of his right of action for loss to him proximately resulting from the injuries to her.

5. *Action by husband for injuries to wife; damages; loss of salary while nursing wife.*—In ascertaining the amount of damages to which the husband may be entitled by reason of an injury inflicted on his wife, the amount of salary lost by the husband while nursing his wife cannot be taken into consideration; and evidence as to time lost by the plaintiff while nursing his wife is not admissible.

6. *Negligence; pleading; certainty.*—In an action against a railroad company for damages to a passenger, a count in the complaint is sufficiently definite and certain in its averments of negligence, which, after alleging the time and place of the injury and the duty owing by defendant to the injured passenger, alleged that defendant "negligently failed to safely carry said passenger as it was his duty to do, and so negligently and unskillfully conducted itself in that regard" that the injury complained of resulted.

7. *Freight trains; jerks and jars; common knowledge.*—It is common knowledge that jerks and jars ordinarily attend the handling and running of freight trains, to a greater degree than passenger trains.

8. *Passengers on freight trains; assumed risks.*—A passenger on a freight train is charged with knowledge that in the handling and running thereof jerks and jars occur and to a greater degree than on passenger trains, and he assumes the risks of the ordinary and usual jerks and jars of such train.

9. *Judicial knowledge; charge to jury.*—Matters of common knowledge are not questions for the determination of a jury, and it is improper for the court to submit them to the jury.

10. *Trial; objections; error without injury.*—Where an answer to a question is favorable to the party objecting to the question, error in overruling such objection is without injury.

APPEAL from the City Court of Birmingham.
Tried before the Hon. CHAS. A. SENN.

[Southern Railway Company v. Crowder.]

This suit was brought by John M. Crowder to recover damages for the resultant effects of injuries sustained by his wife, Mary Crowder, while she was a pasenger on a train of defendant, going from Decatur to Huntsville, in July, 1899. There were four counts in the complaint. The first count was as follows: "The plaintiff claims of the defendant the sum of three thousand dollars for that, on to-wit, the 22nd day of July, 1899, the defendant was a common carrier of passengers for hire between the towns of Decatur, Alabama, and Huntsville, Alabama, and on said day Mary B. Crowder, who was then and still is the wife of plaintiff, was a passenger on defendant's train from said Decatur to Huntsville, and the said defendant negligenty failed to safely carry the said Mary B. Crowder as it was its duty to do, but did so negligently and unskillfully conduct itself in that regard that the said Mary B. Crowder, while such passenger at or near Madison, a point on said road between said Decatur and said Huntsville, was thrown to the floor and her hip dislocated," etc., etc. The grounds of demurrer to this count were as follows: 1. Said count fails to show with sufficient certainty wherein defendant was negligent in failing to safely carry said Mary B. Crowder to her destination. 2. Said count shows on its face that said Mary B. Crowder was at the time of said injuries and still is a married woman, the wife of the plaintiff, and as such entitled under the laws of Alabama to sue for and recover all damages that may have been sustained for the personal injuries complained of in said count, and that as to the other damages claimed in said count as special damages sustained by the plaintiff as husband, namely, the damage incurred by reason of the expense for medical attention, nursing, medicines and hospital charge, the plaintiff's said wife was and is legally liable for the same, and not the plaintiff; and that as to the item for loss of services of the wife the plaintiff had no legal claim upon his said wife for such services under the laws of Alabama; and that as to the item of damage arising from the loss of the comfort and companionsip of his said wife the said count shows on its face that said wife is

still living with the plaintiff and as a member of his family, and that the plaintiff has not sustained any loss by reason thereof."

These demurrers having been overruled, defendant filed pleas of the general issue and contributory negligence. The evidence showed that the train on which Mrs. Crowder was being carried was an accommodation or mixed train, and consisted of a large number of freight cars with a caboose attached at the rear, in which passengers were habitually carried. Mrs. Crowder boarded this train at Decatur, holding a first-class ticket for passage to Huntsville. She was given a seat by the conductor upon a chair at the rear end of the caboose, which chair she occupied until the train reached Madison, and there she was thrown by a jar or jerk of the train, upon the floor of the car, and her right hip was seriously and permanently injured. The evidence was conflicting as to whether the jar or jerk was of unusual severity, and also upon the issue of contributory negligence.

Upon the cross-examination of the conductor, W. A. McMahon, in answer to the question quoted in the opinion, he stated: "I cautioned Mrs. Crowder, told her to hold on and look out for jars and jerks, could not handle them as nice as on a passenger train. Told her that at the tank at Decatur, when I put her in the chair back there."

On the direct examination of J. H. McMahon, a brakeman, he testified in regard to the manner in which the train was stopped at Madison and as to his putting on brakes to stop the train, and that the train was stopped without any unusual jar or jerk. On cross-examination he was asked, among others, the following questions: (1.) "What is the difference in a long train and in a short train with reference to stopping it?" (2.) "If there is air on two-thirds of the cars would you have to put on as many brakes or as soon as if you had air only on a part of it?" These questions were objected to on the ground that the witness was not an expert, and exceptions to the overruling of the objections were

duly reserved. Other facts appear from the opinion. The court in its general oral· charge to the jury instructed them among other. things, as followes: (1.) "If it is a known fact that there are bumps and jerks on a᷄ freight train, and she assumes all the risks incident to ·that· particular mode of travel, distinctly incident to it, that could not be prevented by the exercise of that high degree of care which the law charges the carrier with̖, she assumes this." (2.) "If she did not know of any danger she would have a right to rely upon the defendant's servant in charge of the car; that the place he put her was as safe a spot as he had—that it was an ordinarily safe place, if you believe that the conductor so placed her." Defendant separately excepted to said portions of the general charge, as well as to the refusal of each of the following special written charges, viz.: (5.) "If the jury believe the evidence, they must find for the defendant." (9.) "There can be no recovery by the plaintiff of damages by reason of the alleged loss of his wife's services resulting from the injury to her." (10.) "There can be no recovery of damages in this case by reason of the loss by plaintiff of his wife's society or of her companionship." (11.) "There can be no recovery in this case of damages occasioned to the plaintiff by loss of his wife's aid, assistance or comfort." (12.) "There can be no recovery by the plaintiff of damages based on money expended by the plaintiff or liability incurred by him for medical attention, nursing, medicines or hospital charges in and about endeavoring to cure the plaintiff's wife of her said injuries."

From a verdict and judgment for plaintiff defendant appeals.

SMITH & WEATHERLY, for appellant.—Under the Code, §§ 2521, 2527, the husband cannot claim the value of the services, labor or earnings of his wife in a suit of this character.—*Harmon v. Old Colony R. R. Co.*, 30 L. R. A. 658; *Jordan v. R. R. Co.*, 138 Mass. 425; *West Chicago St. Ry. Co. v. Carr*, 48 N. E. Rep. 995; 9 Am. & Eng. Ency. Law (1st ed.), 790 and note 7.

[Southern Railway Company v. Crowder.]

The plaintiff was not entitled to ' recover for salary lost while nursing his wife.

The questions to the witness McMahon were improper and should not have been allowed.

As to the kind of accommodations, degree of care; etc., to be exercised by railroads in the carriage of passengers on freight trains, see *C. & A. R. R. Co. v. Arnold*, 19 L. R. A. 313; *Ohio Valley R. Co. v. Watson*, 19 L. R. A. 310; 4 Elliott on Railroads, § 1582, and cases cited in note 3, page 2465, and cases cited in note 1, page 2466, and section 1629; Hutchinson on Carriers, § 538a.

NATHAN L. MILLER and LANE & WHITE, *contra*, cited the following authorities as to the damages recoverable, viz.: *London v. Cunningham*, 20 N. Y. Sup. 882; *Riley v. Lidtkey*, 68 N. W. Rep. 357; *Newhinter v. Hatteb*, 42 Iowa 288; *Omaha & R. V. Ry. Co. v. Charlotte*, 59 N. W. Rep. 921; *Grant v. Green*, 41 Iowa 88; *Furnish v. Mo. Pac. Ry. Co.*, 15 S. W. Rep. 315; *Kelley v. R. R. Co.*, 38 L. R. A. 630.

DOWDELL, J.—This is a suit brought by the husband to recover damages resulting from an injury inflicted upon the wife through the alleged wrong or negligence of the defendant's agents or employes. The damages claimed are for the loss of the wife's services to the husband in their marital and domestic relations, and of her companionship, as well as for expenses incurred by the husband in the medical treatment and nursing of the wife on account of the injuries received. It is not questioned by counsel for appellant, but that, apart from any modification of the principles of the common law by our statutes, in regard to the rights of the husband growing out of the marriage relation, the husband could sue and recover damages for a wrong done to the wife occasioning a loss to him of her companionship and services, and for any and all expenses incurred as a proximate result of such wrong. The contention of counsel, however, is that the common law principles in this re-

spect, have been so far modified by our statutes, (§§ 2520 to 2527 of the Code of 1896, and especially §§ 2521 and 2527), that the husband's legal right to the labor, the services and the earnings of the wife, has been taken from him, and that he can no longer maintain a suit of this character for the value of such labor, services, or earnings. So far as we know or are informed by the briefs of counsel, this is the first time the question now presented for our consideration, has ever been before this court. This question, however, has received consideration by the courts of some of the States having statutes similar to ours affecting the rights of married women. The decisions of these courts seem not to be altogether in harmony.

The New York statute relating to married women provided as follows: "A married woman may bargain, sell, assign and transfer her separate property and carry on any trade or business, and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, labor or services, shall be sole and separate property and may be used by her in her own name." The Supreme Court of that State, in *London v. Cunningham;* 20 N. Y. Sup. 882, construing this statute, said: "The rule now prevailing here as to the measure of her damages as regards loss of her services, is that she can recover in her action for the loss of her earning power, over and above her domestic services, which still belong to her husband, but which, of course, are not limited to those of domestic servant, but are such as are usually performed by the wife in the household of her husband, having regard to the surrounding of their home and to their condition in life, and such services would include attendance upon visiting friends as well as boarders in the household; and to all such services, the husband is entitled, and in his action can recover for the loss of all such services which would appertain to his or her home, be it in the country, on a farm, in the city, in a palatial residence or some small apartment in a crowded tenement house." "Of course, the rule under discussion only applies to the wife's services, for the husband can still recover in his

[Southern Railway Company v. Crowder.]

action for the loss of his wife's society and comfort of that society, and this for the future as well as the past, if occasioned by the injuries to the wife; and in the same action he can recover for the necessary expenses incurred by him by reason of such injuries to her."

The Nebraska statute is as follows: "Any married woman may carry on a trade or business and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, labor or services, shall be sole and separate property and may be used and invested by her in her own name." In discussing this statute, the Supreme Court of that State said: "The services which are due to the husband from his wife, and for the loss of which he may recover, are such duties and services as reasonably devolve upon her by reason of the marriage relation." "The law presumes that a wife performs the duties and renders the services towards her family which grow out of the marriage relation, and that she will continue to do so."—*Riley v. Lidtkey*, 68 N. W. Rep. 357. Iowa has a similar statute, and the Nebraska court in discussing the statute of its own State in reference to items of damages, said: "1st. The value of the loss of services and companionship of his wife to the extent that such injuries have incapacitated her from performing all the duties of a wife that reasonably devolve upon her in the marriage relation. As to the first subdivision of the instructions, the argument is that as our married woman's act gives to the wife the right to conduct her own business and her own earnings and emancipates her property and earnings from the husband's control, the husband can no longer recover for loss of services. It will be observed that the court in these instructions, did not submit to the jury generally the determination of the value of the wife's services, but restricted the jury to a consideration of the extent to which her injuries had incapacitated her from 'performing all the duties of a wife that reasonably devolved upon her in the marriage relation.' To this extent the husband can recover, notwithstanding the married woman's act. As said in *New-*

*hirter v. Hatten*, 42 Iowa, 288, on a precisely similar question, 'We feel very clear that the legislature did not intend by this section of the statute to release and discharge the wife from the common law and scriptural obligation and duty to be a helpmeet to her husband. If such a construction were to be placed upon the statute, then the wife would have a right of action against her husband for any domestic service or assistance rendered by her as wife. For her services in the care and nurture and training of his children, she could bring her action for compensation. She would be under no obligation to support and look after any of the affairs of the husband unless her husband paid her wages for so doing. Certainly such consequences were not intended by the legislature, and we cannot so hold, in the absence of positive and explicit legislation.' "—*Omaha & R. V. R. Co. v. Chollette*, 59 N. W. Rep. 921, 925. It was also said by the Supreme Court of Iowa, in the case above referred to in construing the statute which contained the provision that the "wife may receive the wages of her personal labor and maintain an action therefor in her own name and hold the same in her own right": "Wages of her personal labor as here used refer to cases where the wife is employed to some extent in performing labor and services for others than her husband, or where she is carrying on some outside business in her own behalf; such for instance as dressmaking, or millinery business or school-teaching. In a word, she is entitled to the wages for her personal labor or services performed for others, but her husband is entitled to her labor and assistance in the discharge of those duties and obligations which arise out of the marriage relation." In *Grant v. Green*, 41 Iowa, 88, which was an action by the wife against the administrator of her deceased husband, it was held that the wife could not recover for services rendered by her in taking care of her husband in his lifetime during a period of his insanity, and this, notwithstanding, she had been employed by the guardian of her insane husband to perform them. The ruling was put upon the doctrine that the services were such as the marriage relation imposed upon the wife, and

which under the law she was bound to perform in discharge of her marital obligations to the husband, without pecuniary compensation.

As opposed to these authorities, counsel for appellant cite the cases of *Harmon v. Old Colony R. Co.*, 30 L. R. A. 658, and *Jordan v. Railroad Co.*, 138 Mass. 425, wherein the Supreme Court of Massachusetts had under consideration statutes similar to ours. It is claimed by counsel that the effect of the decisions of that court is to hold that a married woman, as a result of this legislation, becomes in view of the law, a distinct and independent person from her husband, not only in respect to her right to own property, but also in respect to her right to use her time for the purpose of owning money on her sole and separate account, and that such right is inconsistent with the right of the husband to demand or control her labor or time, and that, therefore, the wife in her suit for personal injuries could claim as an element of damage the loss of her services, or loss of earning capacity. And from this, it is further contended in argument by counsel, that in a suit brought by the wife for personal injuries to her, she might include in her claim for damages, for loss of earning capacity, and for loss of capacity to give service, aid, and assistance to her husband, and, also, any medical bills or other expenses paid or incurred by her on account of her said injuries. As to the right of the husband to enforce and control the labor and services of the wife, that is a question not involved in the merits of this controversy. There is no inconsistency growing out of the statute conferring on the wife property rights, and the right to earnings arising from her labor and services, with her duties to her husband in the marital and domestic relation. There is no reason why both should not consist together in perfect harmony. In regard to the statement of counsel for appellant, that the wife might include in her claim for damages, loss of earning capacity, we see no reason why this should not be a legitimate claim, to the extent of her earning capacity in performing services for others than her husband

or members of his family, since for such services she could contract for compensation. Nor can we see why expenses actually paid or incurred by her, on account of the injuries received, might not also become a legitimate claim in a suit by her. Of course, she could not recover such expenses, if paid or incurred by the husband. Nor should she recover for loss of capacity to render service to the husband in their domestic relation, for the reason that such service is a duty growing out of their marriage relation, and for which she could not contract for or demand compensation. If the effect of the decision of the Massachusetts court be such as counsel contend for, it is opposed to the better reasoning employed in the decisions of other courts, and from which we have quoted.

Our statute on this subject (Code, § 2521), reads as follows: "The earnings of the wife are her separate property; but she is not entitled to compensation for services rendered to or for her husband, or to or for the family." It will be observed that our statute is not as unrestricted as the statutes of New York and Nebraska are, in giving to the wife her "earnings," but, on the contrary, contains an express limitation, that she shall not be entitled to any compensation for services rendered to or for her husband, or to or for the family; or, in other words, for any services performed by her in discharge of any duty or obligation growing out of the marriage relation. That it was not the intention of the legislature, in conferring by section 2521, upon the wife, the right to her earnings, to absolve the wife from the duties and obligations imposed by the marriage vow in her marital and domestic relations, is placed beyond cavil by the limitation contained in the second clause of the statute. Section 2527 provides that for all injuries to the person, the wife must sue alone. This in nowise takes from the husband his right of action for the loss and damage he has sustained, as a proximate result of the injury done to the wife. He may not sue for the injury itself, and this the appellee concedes. Our conclusion is that the statute does not affect the reciprocal duties of husband and wife growing out of the mar-

riage state, within their domestic relations, and that the husband has a marital right to the wife's services to himself and to the family, and for the loss of which when caused by the wrongful act of another, he has his right of action in damages as against such wrongdoer. So, likewise, for the loss to him of the companionship of his wife, resulting from the wrong and injury to her. His relation as husband imposes upon him the duty of providing and taking care of his wife, and any and all expenses paid or incurred by him, on account of injuries received by her, are recoverable as an element of damages sustained by him.

In ascertaining the amount of damages to which the husband may be entitled by reason of the injury inflicted on the wife, it is improper to take into consideration the amount of salary which the husband has lost while waiting upon and nursing his wife. The court, therefore, erred in this regard, when it permitted the plaintiff, against the objection of the defendant, to show that on account of the injury to his wife, and his having to wait upon her, he lost a month's salary of one hundred dollars. This could not enter into the estimate of damages, and was incompetent and irrelevant evidence, and as such calculated to prejudice the rights of the defendant before the jury.

The negligence of the defendant, as averred in the first count of the complaint, we think is stated with sufficient certainty and definiteness, and the demurrer interposed to the count on that ground was properly overruled.

It is matter of common knowledge that jerks and jars ordinarily attend the handling and running of freight trains, and to a greater degree than regular passenger trains. One who becomes a passenger on a freight train, does so with this knowledge, and assumes the risk of the usual and ordinary jars and jerks of such train. Matters of common knowledge are not questions for the determination of the jury, and instructions which submit such questions to the jury are erroneous. We think the answer to the question asked the witness McMahon, who

was the conductor of the train, "Wasn't it usual for you
to caution ladies about the roughness of the way, and
the necessity for being careful when they took passage
on that caboose?" was favorable to the defendant, and,
therefore, no injury resulted to the defendant. The
other questions to which objections were made were
asked upon cross-examination of the witness, and, we
think, were within the scope of legitimate cross-examin-
ation, and not objectionable as calling for an expert
opinion.

We have sufficiently for the purposes of another trial,
considered the questions raised in the assignments of
error on the charges of the court, and, therefore, deem
it unnecessary to discuss them separately.

For the errors indicated in what we have said above,
the judgment of the lower court will be reversed and the
cause remanded.

Reversed and remanded.


## On Application for Rehearing.

It is insisted by counsel for appellee that in what was
said by us in reference to the ruling of the lower court
in permitting the plaintiff, against the objection of
the defendant, to show that on account of the injury to
his wife, and his having to wait upon her, he lost a
month's salary of one hundred dollars, we declared the
law upon a question which is not in the record. Counsel
say that upon an examination of the record it appears
that the exception arose upon a motion to exclude the
statement of the witness J. M. Crowder, the plaintiff,
"as to the loss of time of one month." The witness in
making his statement of the loss of a month's time, in
the same connection stated that he was getting a salary
of one hundred dollars a month, and that he lost a
month's salary, and we were led into stating the propo-
sition as we did, by the argument of counsel in brief. The
action of the lower court in overruling the defendant's
motion to exclude the witness' statement "as to his loss
of time of one month," was erroneous. It is not the value
of the time lost in attending and nursing his wife, but

the value of his services, while so attending and nursing, that constitutes an element of recoverable damages in such case. The *value* of time lost, and the value of services rendered, are entirely distinct. The complaint does not in terms claim for the value of lost time, and if it had done so, it would have been in that respect defective and objectionable.

It is further urged that the lower court properly overruled the motion to exclude the evidence, for the reason that no objection was made to the question asked the witness. It does not appear from the record that any question was asked the witness eliciting the statement objected to; in fact the record does not show that any question was asked at all, but, on the contrary, it appears that the witness without any question having been asked him, proceeded to deliver his evidence in a narrative form, and in this manner the objectionable statement, to which the motion to exclude was addressed, was made. There is nothing by which a party can usually anticipate illegal testimony when the evidence is given in this manner, and, for that reason, the motion to exclude is the proper remedy.

Since the judgment is to be reversed and the cause remanded for another trial, for the error in overruling the defendant's motion to exclude, it is unimportant to consider whether that which was pointed out as error in the oral charge, was cured by other parts of the charge.

Application denied.